```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
                     COLUMBUS DIVISION
```

CHRISTINA NECOLE VAZQUEZ-      *
KLECHA,
                               *
    Plaintiff,
                               *
vs.                                    CASE NO. 4:20-CV-227 (CDL)
                               *
ELIZABETH ANN BICKERSTAFF and
MICHAEL NEELY,                 *

    Defendants.                *

O R D E R

Michael Neely shot and killed Bick Bickerstaff after Neely and his girlfriend, Elizabeth Bickerstaff, who was also Bick's sister, arrived at Bick's residence following a dispute about property damage. Plaintiff Christina Necole Vazquez-Klecha, as Bick's surviving child, subsequently brought this wrongful death action against Elizabeth and Neely. Plaintiff and both Defendants filed motions for summary judgment. For the following reasons, Elizabeth's motion for summary judgment (ECF No. 50) is granted and the other summary judgment motions (ECF Nos. 52 & 54) are denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

                        FACTUAL BACKGROUND

   The following facts are largely undisputed.  To the extent that a dispute exists, any reasonable inferences are construed in favor of the non-moving party when the opposing party's motion for summary judgment is considered.  George Hale "Bick" Bickerstaff III resided on land that he co-owned with his sister, Elizabeth Bickerstaff, in Harris County, Georgia.  Deed, Superior Court of Harris County, Book 1118 at 166, ECF No. 52-12; Deed, Superior Court of Harris County, Book 1118 at 198, ECF No. 52-13.  Elizabeth lived nearby with her boyfriend of over 25 years, Michael Neely. Neely Dep. 15:2-25, ECF No. 52-5.  Because Bick only stayed on the co-owned property on weekends, Elizabeth gathered the mail sent there and delivered it to Bick when he arrived.  Pl.'s Mot. for Summ. J. Ex. B, E. Bickerstaff Interview Tr. (July 12, 2019) 19:6-19, ECF No. 54-3.

On July 12, 2019, Bick discovered damage in a fence surrounding the dove field on the Harris County property. E. Bickerstaff Dep. 116:8-22, ECF No. 52-3. Bick suspected this damage was caused by Elizabeth's cows, and he engaged in a contentious phone call about the fence damage with Elizabeth at around 8:19 PM that same evening. *Id.* Following the conversation, Elizabeth and Neely decided to take Elizabeth's truck to visit Bick at his Harris County residence. *Id.* at 141:10-16. Neely placed several firearms and at least 65 rounds of ammunition in Elizabeth's truck before they departed. *Id.* at 148:13-20; Neely Dep. 82:19-83:7.

When Elizabeth and Neely arrived at Bick's residence, Bick was sitting in a golf cart with a rifle. E. Bickerstaff Dep. 133:9-13. Bick picked up the rifle and fired a shot in the direction of Elizabeth's truck. *Id.* at 133:12-14. Elizabeth then drove the truck forward and stopped close to Bick's golf cart. *Id.* at 133:18-20, 155:19-156:5. Elizabeth opened her truck door and ducked, and Neely exited the vehicle and rapidly approached Bick while holding a 9-milimeter handgun. *Id.* at 158:23-159:6; Neely Dep. 120:8-18. Bick turned to face Neely, and Neely pushed Bick's gun up into the air. Neely Dep. 102:16-21, 143:9-144:1. Neely then shot Bick in the head. *Id.* at 120:8-18. Bick was taken to the hospital and died because of his wounds. Gowitt Dep. 82:4-8, ECF No. 54-11.

DISCUSSION

Plaintiff asserts negligence claims against both Elizabeth and Neely, claiming that their negligence caused Bick's wrongful death.  Defendants contend they are entitled to summary judgment on Plaintiff's negligence claims because they did not owe Bick a duty of care, they were not negligent, their actions did not proximately cause Bick's death, they were entitled to act in self-defense, and Bick assumed the risk of injury through his own conduct.  Plaintiff opposes Defendants' motions for summary judgment, and also seeks summary judgment that Defendants cannot, as a matter of law, assert that they acted in self-defense.[1]  The Court first addresses Plaintiff's claims against Elizabeth, then turns its attention to the claims against Neely.

## I. Claims Against Elizabeth

Although it is not entirely clear from Plaintiff's briefing, it appears that Plaintiff intends to assert two separate alternative causes of action against Elizabeth—one based upon Elizabeth's individual negligence and a second based on her concerted action with Neely.  As to Elizabeth's negligence, Plaintiff maintains that Elizabeth was negligent by relaying Bick's call to Neely, by driving him over to Bick's house when she

---

[1] Defendants further argue that any claims for "exemplary" damages must be dismissed.  But Plaintiff concedes that she does not bring any claims for exemplary damages in the current complaint.  *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. 19-20, ECF No. 59.  To the extent that she did allege such claims, they have now been abandoned.

4

knew he had guns with him, by approaching Bick aggressively with her vehicle after Bick shot at her, and by not retreating from the confrontation. She contends that this negligence joined with the negligence of Neely when he shot Bick and that the combined negligence of Elizabeth and Neely was the proximate cause of Bick's death. Second, Plaintiff alleges an alternative theory of liability based upon common law concerted action, claiming that Neely's negligence in shooting Bick is imputed to Elizabeth because they acted in concert to proximately cause Bick's death. The Court addresses each claim in turn.

    A.   <u>Liability for Her Own Negligence</u>

The current record is not sufficient for a reasonable jury to conclude that Elizabeth's individual conduct amounted to negligence and that her alleged negligence was a proximate cause of Bick's death. It is axiomatic that for someone to be liable based upon negligence, the person must have failed to exercise that degree of care that a reasonable person would have exercised under similar circumstances. *See Duncan & Stancil, Inc. v. Peden*, 282 S.E.2d 708, 710 (Ga. Ct. App. 1981) ("Negligence is the failure to exercise the care which an ordinarily prudent person would use under the circumstances."). Furthermore, negligence alone does not support a cause of action. The negligence must have been a proximate cause of the injury. *Morris v. Baxter*, 483 S.E.2d 650, 651 (Ga. Ct. App. 1997). "Proximate cause is that which, in the

natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred." *Johnson v. Avis Rent A Car Sys., LLC*, 858 S.E.2d 23, 29 (Ga. 2021) (quoting *Zwiren v. Thompson*, 578 S.E.2d 862, 865 (Ga. 2003)). "In this regard, a negligent actor who breaches a duty to another 'is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is **probable**, according to ordinary and usual experience.'" *Id.* (quoting *Johnson v. Am. Nat'l Red Cross*, 578 S.E.2d 106, 108-09 (Ga. 2003)) (emphasis added). "The natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again." *Strickland v. DeKalb Hosp. Auth.*, 397 S.E.2d 576, 580 (Ga. Ct. App. 1990) (quoting *Jacobs v. Taylor*, 379 S.E.2d 563, 567 (Ga. Ct. App. 1989)).

Proximate cause, like negligence, "is ordinarily a jury question," but can be "determined by the court as a matter of law in plain and undisputed cases." *Avis Rent A Car*, 858 S.E.2d at 593. (quoting *McAuley v. Wills*, 303 S.E.2d 258, 261 (Ga. 1983)). When the negligence of two persons combines to proximately cause an individual injury, both parties may be found liable based upon their respective fault. O.C.G.A. § 51-12-33(b). But even in this scenario, the party must have been negligent and that person's negligence must have combined with the other party's negligence as

6

a proximate cause of the indivisible injury. *See Martin v. Six Flags Over Ga. II, L.P.*, 801 S.E.2d 24, 36 (Ga. 2017) (explaining that the apportionment statute is designed to apportion damages among those who "breached a legal duty in the nature of a tort that is owed for the protection of the plaintiff, the breach of which is a proximate cause of his injury") (alterations omitted). Thus, the question regarding Plaintiff's claim against Elizabeth for her alleged individual tortious conduct is whether this is a plain and indisputable case. As explained below, the Court finds that it is.

The undisputed evidence establishes that when Bick, Elizabeth's brother, called accusing her cows of damaging his fence, she relayed that information to her live-in boyfriend of over 20 years. Such conduct would be expected and is what a reasonably prudent person would do upon being accused of such conduct. Furthermore, getting in her vehicle with her boyfriend to investigate certainly would not constitute the actions of someone who is failing to exercise ordinary care, particularly given that she had mail to deliver to her brother which was part of their custom.[2]

---

[2] The evidence does not support counsel's bald suggestion that Elizabeth was a trespasser. The evidence is uncontradicted that Elizabeth and her brother jointly owned the property on which Bick's residence sat.

7

Counsel's suggestion that Elizabeth's driving to her brother's house knowing that Neely "was armed" is a red herring. First, there is no claim that Neely did not have the legal right to possess the guns and ammunition. In fact, it is undisputed that he had the constitutional right to possess the guns. Furthermore, Plaintiff has pointed to no evidence that he possessed the guns for an improper purpose. Neely explained that he always took his guns with him when he went to Bick's property in case he encountered wild animals. Plaintiff presented no evidence to contradict this testimony. Speculation has never been a substitute for evidence, nor an effective means of impeachment. Quite frankly, even if he did take the guns with him in case he needed them to defend himself against Bick, that fact, which is not supported by any evidence, does not support the conclusion that Elizabeth was somehow negligent by accompanying him. When they first arrived, Bick shot at them, and in response, Elizabeth drove her vehicle forward in his direction. But there is no evidence that she struck him, and certainly the mere operation of her vehicle in that manner in response to being shot at would not amount to negligence that proximately contributed to Neely shooting Bick. Plaintiff has pointed to no evidence that Elizabeth had any expectation that Neely would shoot Bick, much less that she drove the car for the purpose of accomplishing that shared objective.

The record simply does not permit a reasonable jury to conclude that Elizabeth acted negligently preceding and during this tragic incident. Moreover, even if one concluded that Elizabeth was somehow negligent, the evidence does not support a finding that her negligence was a proximate cause of Bick's death. There is no evidence from which a reasonable jury could conclude that Neely's spur of the moment shooting was foreseeable to Elizabeth. More precisely, there is no evidence that Elizabeth should have foreseen that her allegedly negligent conduct would lead to her boyfriend shooting her brother. Without such reasonable foreseeability, there can be no proximate cause. *Strickland*, 397 S.E.2d at 580.

Because a reasonable jury could not find from the present record that Elizabeth acted negligently or that any alleged negligence on her part proximately caused Bick's death, this claim fails as a matter of law.

B.  Concerted Conduct Liability

Plaintiff's counsel also claims that Neely's alleged negligent conduct should be imputed to Elizabeth under the Georgia common law theory of concerted conduct liability. Plaintiff misunderstands that law and its proper application to the facts of this case. Counsel's attempt to cherry-pick isolated passages from certain precedent while completely ignoring others that are necessary for a full understanding of this theory of liability is

9

disappointing. Common law concerted action "is predicated on the idea that wrongdoers 'in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's acts done for their benefit, are equally liable.'" *F.D.I.C. v. Loudermilk*, 826 S.E.2d 116, 127 (Ga. 2019) (quoting Prosser & Keaton § 46, at 323) (alterations omitted). At oral argument, counsel for Plaintiff isolated a single phrase from *Loudermilk* - "lend aid or encouragement to the wrongdoer" – and completely ignored the sine qua non of concerted conduct liability—the actual existence of "concerted" conduct.

The "lending aid or encouragement" language relied upon by Plaintiff's counsel cannot be read in isolation. It must be connected to underlying tortious activity, as *Loudermilk* explicitly notes that any lending aid or encouragement must be done "in pursuit of a common plan or design to commit a tortious act." 826 S.E.2d at 125. As the Court in *Loudermilk* made clear, "it is 'essential that each particular defendant who is to be charged with responsibility [proceeded] tortiously, which is to say with the intent requisite to committing a tort, or with negligence.'" *Id.* (quoting Prosser & Keaton § 52, at 346). Here, the alleged underlying tortious activity is the negligent shooting of Bick. Simply driving the car over to Bick's place with no

10

intention or knowledge of a plan to shoot Bick does not constitute tortious conduct. Nor does Elizabeth driving her vehicle in the direction of Bick amount to tortious activity when she did not strike him and there is no evidence that she did so to aid Neely in shooting him. In fact, there is no evidence that at the time she drove toward her brother that she had any idea Neely was going to shoot him. To be concerted activity, the participating party must at least tacitly understand that any lending of aid or encouragement is for the purpose of facilitating the commission of tortious activity. Contrary to counsel's suggestion at the hearing, the Court fully understands that "'[e]xpress agreement is not necessary' to establish concerted action," but what counsel fails to grasp is that there must at least be "a tacit understanding" that the parties were going to engage in activity that amounted to tortious conduct. *Loudermilk*, 826 S.E.2d at 125 (quoting Prosser & Keaton § 46, at 324). And to avoid summary judgment there must be sufficient evidence from which a reasonable jury could conclude, without speculation, that such an understanding existed.

There is no evidence in the record here from which a reasonable jury could conclude that an agreement, express or tacit, existed for Elizabeth to help Neely shoot Bick or to even help Neely act tortiously in a way that could foreseeably result in Bick's death. Quite frankly, it is sheer speculation that they

11

had any type of common plan or implicit understanding that they were even going to aggressively confront him. Plaintiff relies on the following to support her speculation: (1) Elizabeth relayed the contents of her contentious conversation with Bick to Neely, *see* Neely Dep. 68:7-14 ("Q. So, after she hangs up with Bick, she comes and she begins to speak to you about the conversation, and she tells you that Bick said he was going to shoot the damn cows? A. Yeah. Q. And she tells you that she's had enough? A. Yes."); (2) Neely then loaded guns into his truck and stuck a handgun in his pocket, *see* Pl.'s Mot. for Summ. J. Ex. E, Neely Interview Tr. (July 12, 2019) 26:14-22, ECF No. 54-6 ("She was telling me that he was raising hell about the cows . . . so I stuck my gun in my pocket like I do every time."); (3) Defendants then drove to Bick's house for the stated purpose of delivering his mail and checking on the fence, E. Bickerstaff Dep. 129:11-16; (4) As Defendants entered the driveway, Bick shot at the truck, and Elizabeth continued driving in a way that made Neely think she would ram Bick, *see* Neely Interrogation 35:17-18 ("Beth come to a stop right by the - - I thought she was going to run over him."); E. Bickerstaff Interview Tr. 54:11-19 ("You know, my first thought, to be honest with you, I was going to ram him."). (5) Elizabeth

12

wanted to "beat [Bick's] butt."  E. Bickerstaff Interview Tr. 54:24-55:3.[3]

Plaintiff's counsel contends that a reasonable jury could conclude from this limited evidence that Elizabeth and Neely had an understanding that they would incite Bick to use violence so that Defendants could in turn use deadly force against Bick.[4]  For a jury to make that conclusion from that evidence, they would either have to engage in absolute guesswork or ignore the evidence out of sympathy or anger.  The law permits neither, and the Court would be derelict in its duty to allow such a claim to go forward.  Nothing about Elizabeth's decision to inform Neely about her conversation with Bick suggests she wanted to incite Neely to act violently.  Further, Neely had a legal and constitutional right to possess the guns he brought to Bick's residence, and Neely stated that he "always" brought guns with him when he went there to protect himself from wild animals.  Neely Dep. 84:2-11, 87:1-4.  At the oral argument on the pending motions, Plaintiff's counsel

---

[3] A fair reading of the record, even when construed in Plaintiff's favor, reveals that Elizabeth's subjective desire to "beat Bick's butt" occurred after Bick shot at her.  But even if she had this subjective desire before she was shot at, her subjective intent does not create an inference supporting Plaintiff's negligence claim.  There is simply no evidence that Elizabeth acted upon her desire or that she had any plan or tacit understanding with Neely to effectuate that subjective intent.
[4] Plaintiff filed a motion seeking to introduce supplemental citations of authority.  ECF No. 74.  The Court did review the authority and finds it easily distinguishable from the current action because the cases cited by Plaintiff actually involved evidence of concerted action whereas such evidence is lacking here.

13

responded irrelevantly that Bick had a constitutional right not to be shot.  Maybe so.  But that does not come close to addressing how Elizabeth could be legally responsible for Neely's shooting of her brother.  This case has nothing to do with gun rights or gun control, except to the extent that given Neely's legal possession of the guns, Elizabeth had no duty to try to disarm him under the circumstances presented here.  The fact that Plaintiff's counsel may not believe that Neely should have had that many guns or that much ammunition is irrelevant to Elizabeth's liability here.  The glaring hole in Plaintiff's case is the absence of any evidence that Elizabeth had an understanding that Neely intended to use them negligently to shoot Bick.  None.  Plaintiff has had an opportunity to discover all of the evidence that may exist to support her claim that Elizabeth and Neely acted in concert to bring about Bick's tragic death.  She has come up short.  Her concerted conduct claim fails as a matter of law.  Accordingly, Elizabeth's motion for summary judgment is granted in its entirety.[5]

---

[5] The Court acknowledges Plaintiff's challenge given that she only has the Defendants' version of events to work with because her only witness, Bick, did not survive to tell his story.  But the Court is not permitted to speculate about what that story may have been.  There must be enough evidence from which a reasonable jury could make a reasonable conclusion.  While that evidence can certainly be circumstantial, such evidence cannot be based on a hunch or intuition.  Plaintiff has to point to factual circumstances that would give rise to a reasonable inference.  The circumstances here do not provide any reasonable inference that Elizabeth acted in concert with Neely to shoot or physically harm her brother.

## II. Claim Against Neely

As to the claim against Neely, both Neely and Plaintiff seek summary judgment. The Court finds that genuine fact disputes exist regarding Plaintiff's claim against Neely based upon Neely's individual negligence. Accordingly, Neely and Plaintiff's motions for summary judgment are denied as to that claim.[6]

## CONCLUSION

For the foregoing reasons, Elizabeth's motion for summary judgment (ECF No. 50) is granted. Neely's and Plaintiff's motions for summary judgment (ECF Nos. 52 & 54) are denied.

IT IS SO ORDERED, this 16th day of December, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[6] Defendants also seek summary judgment that Plaintiff cannot recover payments from Bick's trust that he would have received had he not died. Plaintiff argues that she can recover both the trust corpus and the income from that corpus. In evaluating the economic component of a wrongful death decedent's life, a jury may consider the decedent's earnings, including pensions, annuities, and social security benefits. *Miller v. Tuten*, 223 S.E.2d 237, 239 (Ga. Ct. App. 1976). Accordingly, Plaintiff may introduce evidence of the income that Bick would have earned from the trust corpus over his life had he lived reduced to present value. However, she may not recover the aggregate value of the assets of the trust or the value of Bick's interests in real property at the time of his death. To allow such recovery of the corpus would amount to a double recovery. Plaintiff has pointed the Court to no authority supporting the broad proposition that the value of all of the assets that a wrongful death decedent owned at his death can be considered as part of the economic component of the full value of the decedent's life.